UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

SUMMIT VIEW, LLC,
ASHLEY GLEN, LLC, and
RIVERWOOD, LLC,

                  Debtors.
_____

THADDEUS FREEMAN, PLLC,

                  Appellant,

v.                                                Case No.  8:11-cv-724-T-24

SUMMIT VIEW, LLC,
ASHLEY GLEN, LLC, and
RIVERWOOD, LLC,

                  Appellees.
_____/

## ORDER

     This cause comes before the Court on an appeal from an order of the Middle District of

Florida Bankruptcy Court dated February 15, 2011, in which the bankruptcy court granted the

debtors' Motion to Enforce Settlement Agreement in favor of the Appellees, Summit View,

LLC, Ashley Glen, LLC, and Riverwood, LLC, and over the objection of the Appellant,

Thaddeus Freeman, PLLC ("Freeman" or "Appellant").  Freeman, counsel for the creditor, WDG

Construction, Inc. ("WDG"), opposed the enforcement of the settlement agreement, on the

ground that its charging lien attached to plan payments due under the settlement agreement.  The

bankruptcy court, however, disagreed, and ruled that Freeman's charging lien did not attach to

plan payments, and further, that Freeman was estopped from enforcing its lien as to those payments.

## I.      Background

Summit View, LLC, Ashley Glen, LLC, and Riverwood, LLC, the debtors, are related entities whose Chapter 11 bankruptcy cases were jointly administered in the Middle District of Florida under the Summit View, LLC case number.  WDG Construction, Inc. was a creditor of Summit View, LLC and Riverwood, LLC.  All three related debtors are owned by JES Properties, Inc., which is in turn owned by Douglas J. Weiland and his wife, Elizabeth Sirna.

All three related debtors were formed for the purpose of land development, including commercial, retail, and residential development.  The Chapter 11 reorganization of the debtors was precipitated by a number of factors, including a downturn in the housing and construction industries, breaches of contract, problems with project financing, and ongoing litigation.

### A.      Summit View, LLC's Bankruptcy Proceedings and Confirmation of Bankruptcy Plan

Summit View, LLC filed for Chapter 11 reorganization on April 2, 2009.  Thereafter, both Ashley Glen and Riverwood filed for Chapter 11 reorganization.  The bankruptcy court then consolidated these three cases under the Summit View name and case number.  On March 17, 2010, the bankruptcy court entered an order confirming Summit View's plan.  The plan included a secured claim in favor of WDG against Summit View in the amount of $1,002,093.77, which was to be paid in sixty equal monthly payments of $6,154.00.

While the bankruptcy proceedings were ongoing, multiple adversary proceedings were initiated against Appellant's client, WDG.  WDG filed counterclaims in those actions.  The adversary proceedings remained pending as of the date of the confirmation of Summit View's

2

plan, and ultimately were resolved through a post-confirmation settlement agreement.

Appellant represented WDG from August of 2009 until the conclusion of the Summit View bankruptcy, including representation in the adversary proceedings initiated against WDG, as well as, throughout all settlement negotiations.  Appellant and WDG executed an Hourly/Contingency Fee Agreement, wherein WDG agreed to pay Appellant an hourly rate of $350.00 or 33 1/3 percent "of the gross amount of any recovery as paid . . . whichever is greater."

### B.    The Parties' Settlement Agreement and WDG's Assignment of Plan Rights to CWES

In the fall of 2010, WDG and Summit View reached a settlement as to all claims, counterclaims, objections to claims, and adversary proceedings.  Pursuant to the terms of the settlement, all of WDG's rights to receive payments under the Summit View plan were assigned to CWES II, LLC[1].  Paragraph 5 of the settlement agreement, titled "Assignment of WDG/Summit Lien Rights, WDG Plan Rights, WDG Adversary Proceedings, Subcontractor Liens, and Subcontractor Bankruptcy Claims," contained the following provision:

> On the Closing Date, WDG shall execute (with notarization) and deliver to counsel for CWES an Assignment, in the form of Exhibit C attached hereto (the "Assignment"), under which WDG shall assign to CWES, WDG's entire right, title and interest in or to the following: . . .

---

[1]CWES II, LLC (hereinafter "CWES") is a corporate entity that purchased WDG's rights to receive payments under the Summit View plan in exchange for $200,000.00.  As the bankruptcy court noted at a hearing on the motion for approval of the settlement agreement:

> What occurred here is a fairly common situation in bankruptcy.  And, that is, the creditors are often willing to discount whatever the face amount of a debt obligation coming out of a plan is because of the uncertainty of payment and because of a history of bankruptcy, frankly; also the need for cash.

3

(ii) the WDG Plan Rights; . . .

Provided that in no event shall CWES assume or otherwise become liable for any obligations or liabilities of WDG under any of the foregoing.

In consideration for the assignment of the right to receive payments under the Summit View plan, CWES paid WDG $200,000.00.  Appellant actively represented WDG throughout the post-confirmation settlement proceedings, including the negotiation and signing of this settlement agreement.

On August 20, 2010, the debtors filed a motion for approval of the settlement agreement. In their motion, the debtors explained that, according to the terms of the settlement, CWES would pay WDG $200,000.00, and in exchange for that payment, WDG would assign to CWES its secured claim against Summit View, worth $1,002,093.77.   The debtors further reiterated that CWES would not acquire any liabilities of WDG.  Neither Appellant nor WDG objected to the motion or to the terms of the settlement.  Thereafter, on September 13, 2010, the bankruptcy court approved the settlement.  The settlement agreement was signed and became effective on September 24, 2010.

Once CWES transferred the settlement funds of $200,000.00 to Appellant's trust account, Appellant filed a Motion to Disburse Court Ordered Funds to Attorney.  In its motion, Appellant argued that it was entitled to a charging lien on the settlement funds that WDG received under the settlement agreement, and requested that the bankruptcy court approve disbursal of one-third of the settlement funds, or approximately $66,000.00.  The bankruptcy court granted that motion, giving Appellant the right to disburse to itself funds equivalent to one-third of the total amount of funds WDG received from CWES pursuant to the settlement agreement.

4

### C.   The Debtor's Motion to Enforce Settlement Agreement and the Bankruptcy Court's Ruling

After confirmation of all Chapter 11 plans, and after consummation of the settlement agreement, Appellant, for the first time, claimed that it retained a valid charging lien as to the plan payments that were originally supposed to be made to WDG and were assigned to CWES, in addition to the agreed charging lien on the $200,000.00 settlement proceeds.  Appellant's demand to receive a one-third portion of the plan payments that had been assigned to CWES led Summit View to file a Motion to Enforce Settlement Agreement, in which it requested that the bankruptcy court make a determination that neither CWES nor Summit View was obligated to Appellant for one-third of the plan payments assigned to CWES under the settlement agreement.

The bankruptcy court conducted a hearing on the motion on February 9, 2011.  After hearing from the parties, the court granted Summit View's motion, finding that Appellant's charging lien did not extend to the assigned plan payments.  The bankruptcy court, describing this as "an easy case to call," reasoned:

> Under no set of imaginable circumstances was it contemplated by this Court, or any of the parties to that Settlement Agreement, that Mr. Freeman's lien rights extended to something that WDG didn't get, because that's not how attorney charging liens work. . . .
>
> Mr. Freeman was retained for the defense and collection services in connection with claims against these debtors.  As all collection lawyers know, you get a piece of the money that comes in at the end of the day.  And in this case that money was $200,000.  That's all that WDG got and that's all they're ever going to get.

The bankruptcy court further added that "Mr. Freeman would be estopped from claiming any [portion of the plan payments], given that he was intimately involved in all these transactions." The bankruptcy court granted Summit View's Motion to Enforce Settlement Agreement on February 15, 2011.  Appellant Freeman appeals that ruling.

II.    **Standard of Review**

Functioning as an appellate court, this Court independently reviews the factual and legal

determinations of the bankruptcy court.  *In re Jacobs*, 490 F.3d 913, 921 (11th Cir. 2007).  The

Court conducts a *de novo* review of the bankruptcy court's legal conclusions, and must accept

the bankruptcy court's factual findings unless they are clearly erroneous.  *In re Mitchell*, 633

F.3d 1319, 1326 (11th Cir. 2011); *In re Waldron*, 536 F.3d 1239, 1240 (11th Cir. 2008).

The bankruptcy court's decision regarding the applicability of the charging lien is a

conclusion of law, which is reviewed *de novo*.  *In re Fla. Allstate Trucking*, 207 B.R. 256, 257-

58 (Bankr. M.D. Fla. 1997).  Where a bankruptcy court has exercised discretion, as in the

application of estoppel, the standard of review is abuse of discretion.  *Robinson v. Tyson Foods,*

*Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010).  The abuse of discretion standard requires an

appellate court to affirm unless it finds that the lower court "has made a clear error of judgment

or has applied the wrong legal standard."  *Id.* (citations and quotations omitted).

III.   **Discussion**

On appeal, Appellant argues that the bankruptcy court erred in enforcing the settlement

agreement and, in doing so, declining to impose its charging lien on the plan payments due to

CWES under the parties' settlement agreement.  Appellant contends that it provided adequate

notice of its valid charging lien, and that such lien applied to both the plan payments and the

proceeds that WDG recovered in exchange for WDG's assignment to CWES of the right to

receive the plan payments.

In response, Appellees contend that Appellant would secure a windfall if it was permitted

to attach its charging lien to the plan payments.  Appellees assert that the $200,000.00 in

settlement proceeds that WDG received constitute the entire result of Appellant's efforts on

behalf of WDG, and therefore, the charging lien attached only to those funds.  Appellees

furthermore contend that Appellant should be estopped from recovering any fees from the plan

payments because Appellant represented WDG throughout the settlement negotiations and never

objected to the agreement or its terms.

   **A.   The Bankruptcy Court Correctly Ruled that Appellant's Charging Lien
        Attaches Only to Funds Recovered by its Client under the Settlement
        Agreement and Not to Plan Payments Made After the Assignment.**

   The charging lien is an equitable remedy that has long been recognized by the courts as a

means of protecting an attorney from a client who would enjoy the fruits of the attorney's labor

but attempt to avoid fair payment for the labor.  *Weed v. Washington*, 242 F.3d 1320, 1323 (11th

Cir. 2001); *In re Estate of Warner*, 35 So. 2d 296, 298 (Fla. 1948).  Charging liens are a state law

issue, and as such, courts apply state law to determine the applicability of a charging lien.  *Weed*,

242 F.3d at 1322.

   In Florida, to impose a charging lien, an attorney must show:

   (1) an express or implied contract between attorney and client; (2) an express or
   implied understanding for payment of attorney's fees out of the recovery; (3)
   either an avoidance of payment or a dispute as to the amount of fees; and (4)
   timely notice.

*Daniel Mones, P.A. v. Smith*, 486 So. 2d 559, 561 (Fla. 1986).

   Charging liens apply to the proceeds of a lawsuit, or that amount which the attorney has

actually recovered on behalf of the client.  *LaVere-Alvaro v. Spyrett, Meshad, Resnick, Lieb,

Dumbaugh, Jones, Krotec & Westheimer, P.A.*, 54 So. 23d 1056, 1058 (Fla. 2d DCA 2011).  A

charging lien applies to what the client has walked away with, because the purpose of the lien is

to prevent a litigant from "walk[ing] away with his judgment and refus[ing] to pay his attorney

7

for securing it." *Warner*, 35 So. 2d at 298.  However, "[i]t is not enough to support the imposition of a charging lien that an attorney has provided his services; the services must, in addition, produce a positive judgment or settlement for the client, since the lien will attach only to the tangible fruits of the services." *Mitchell v. Coleman*, 868 So. 2d 639, 641 (Fla. 2d DCA 2004).  In other words, "where there are no proceeds of the judgment, there is nothing to which a lien may, as a practical matter attach." *Glickman v. Scherer*, 566 So. 2d 574, 575 (Fla. 4th DCA 1990).

Here, the parties do not dispute that Appellant had a valid charging lien that attached to the settlement funds recovered by its client, WDG.  Appellant moved for imposition of the charging lien on the settlement funds and for dispersal of one-third of those settlement funds to itself.  The bankruptcy court recognized the validity of Appellant's charging lien, and properly granted Appellant's motion to recover its fee from WDG's settlement proceeds.  Appellant has already received the benefit of the charging lien.

The parties disagree, however, as to whether Appellant's valid charging lien attaches to the plan payments which were due to WDG under the confirmed plan.  Appellant argues that it perfected its lien as to the plan payments and never waived the lien, thereby allowing it to collect its fee from the plan payments *in addition* to the fee it already collected from the settlement funds.  The Court disagrees.

Appellant's Notice of Charging Lien was not timely as to the confirmation plan, and thus the plan payments.  To perfect a charging lien, an attorney only needs to give timely notice of intention to charge the lien, which is defined by courts as filing a notice of, or a motion for, a charging lien any time before the reduction of the claim to final judgment.  *Levine v. Gonzalez*,

8

901 So. 2d 969, 974 (Fla. 4th DCA 2005).  Here, the parties agree that the confirmation order is the equivalent of a final judgment as to the plan payments.

The confirmation order in the Summit View case was entered on March 17, 2010.  At the time of confirmation, Appellant had not given any notice of a charging lien.  By its own admission, Appellant asserts that the first mention of a charging lien was made during open court at a status conference on May 26, 2010, over two months after confirmation.  Furthermore, Appellant's Notice of Charging Lien was not filed until August 17, 2010.  Therefore, according to Appellant's own argument, and admitted facts, the notice was given after the final confirmation order was entered, and therefore, was not timely as to the plan payments.

Additionally, even if Appellant's notice of charging lien was timely as to the plan payments, the charging lien never attached to the plan payments.  As previously noted, a charging lien attaches only to actual proceeds obtained by the attorney on behalf of his client. *Mitchell*, 868 So. 2d at 641 (ruling that a charging lien "attach[es] only to the tangible fruits of the services").  Furthermore, when a client chooses settlement over continued litigation, the settlement proceeds constitute the proceeds of the litigation to which the charging lien will attach. *LaVere*, 54 So. 3d at 1058.

As a result of the settlement negotiations and agreement, Appellant obtained a settlement of $200,000.00 on behalf of its client, WDG, to which the charging lien did attach.  WDG did not "walk away" from the negotiations with a right to receive plan payments; rather, that right was assigned to CWES in exchange for valuable consideration of $200,000.00.  As the bankruptcy court noted, "All of the efforts that [Appellant] expended in working for WDG produced settlement proceeds of [$]200,000.  That's the proceeds.  That's what [Appellant] gets

a lien on." Thus, the charging lien properly attached only to the $200,000.00, and Appellant was permitted to deduct its agreed-upon fees from that amount. The bankruptcy court therefore did not err in ruling that the charging lien did not attach to plan payments that WDG never received as proceeds of the settlement.

> **B.    The Bankruptcy Court Correctly Ruled that Appellant Was Estopped from Asserting a Charging Lien as to Plan Payments After Their Assignment.**

Appellant also disputes the bankruptcy court's ruling that it was estopped from asserting a charging lien against the plan payments. At the hearing on the debtors' motion to enforce the settlement agreement, the bankruptcy court stated that Appellant "would be estopped from claiming any of [the plan payments]." The bankruptcy court, however, did not elaborate on the type of estoppel that formed, in part, the basis for the court's ruling. On appeal, this Court may apply any form of estoppel that is supported by the facts and the law in this case. *Bueno v. Workman*, 20 So. 3d 993, 997 (Fla. 4th DCA 2009).

The Court concludes that the record supports a finding that Appellant should be equitably estopped from asserting its charging lien against the plan payments. Equitable estoppel is designed to prevent one party from making conflicting representations, and thereby benefitting at the expense of another party. *Fla. Dep't of Health & Rehab. Servs. v. S.A.P.*, 835 So. 2d 1091, 1096 (Fla. 2002). The elements of equitable estoppel are:

> (1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon.

*Curci Village Condo. Ass'n v. Maria*, 14 So. 3d 1175, 1177 (Fla. 4th DCA 2009).

Appellant asserts that there is no record evidence that it ever asserted that it was not

entitled to a charging lien on the plan payments.  Under the circumstances of this case, however, Appellant's silence regarding its intention to attach its lien to the plan payments is equivalent to a material representation regarding its position.  *Taylor v. Kenco Chem. & Mfg. Corp.*, 465 So. 2d 581, 586 (Fla. 1st DCA 1985) (noting that equitable estoppel is the doctrine "by which a person may be precluded by his act or conduct, or silence which it is his duty to speak, from asserting a right which he otherwise would have had") (citations and quotations omitted).

Appellant represented WDG throughout the settlement negotiations.  The settlement agreement, as negotiated by Appellant on behalf of WDG, clearly assigned all of WDG's rights in the plan payments to CWES, warranting that those rights were free of any encumbrances. Furthermore, the terms of the proposed settlement agreement were spelled out in detail in the parties' motion to approve the settlement.  It was clear to all parties that CWES was acquiring WDG's secured claim of $1,002,093.77, that such amount consisted of the entire claim of WDG under the confirmed plan, and that CWES would not have any liability on behalf of WDG regarding the plan payments.  Although Appellant was aware of the terms of the settlement agreement and the motion, it did not object to the settlement agreement, the motion, or to the terms contained therein.

Furthermore, it is clear from the record that the Appellees detrimentally relied on Appellant's representation regarding its intention not to seek enforcement of the lien against the plan payments.  If Appellant had notified the parties that the settlement agreement and motion to approve the agreement were incorrect, i.e., that Appellant would be entitled to one-third of the plan payments, the outcome of the settlement undoubtedly would have been different, if not defeated altogether.  As the bankruptcy court acknowledged during the hearing, "no one

11

would've agreed to pay $200,000 for something that had a lien on it that wasn't even part of the settlement or the discussions included in the settlement document."  Appellant's failure to notify the parties of any objection to the terms of the settlement agreement prevents it from now maintaining a position in contradiction to those terms.

## IV.    Conclusion

In conclusion, the Court finds that the bankruptcy court's decision to enforce the settlement agreement, thereby declining to impose the charging lien on the plan payments under the settlement agreement, was proper and must be upheld.  Accordingly, it is **ORDERED AND ADJUDGED** that:

(1)    The decision of the Bankruptcy Court is **AFFIRMED**;

(2)    The Clerk is directed to enter judgment in favor of Appellees Summit View, LLC, Ashley Glen, LLC, and Riverwood, LLC, and against Appellant Thaddeus Freeman, PLLC, and to close the case.

**DONE AND ORDERED** at Tampa, Florida, this 1st day of August, 2011.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record
The Honorable Michael G. Williamson, U.S. Bankruptcy Judge

12